STATE OF NORTH CAROLINA v. KERRY LEE DALE

No. 98A95

(Filed 4 April 1996)

**1. Evidence and Witnesses § 778 (NCI4th)— exclusion of question—absence of answer from record**

Defendant cannot show prejudice from the trial court's exclusion of a question asked by defense counsel in cross-examination of a State's witness where the record does not show what the answer of the witness would have been had she been permitted to respond to the question.

**Am Jur 2d, Appellate Review §§ 752-754, 759.**

**2. Evidence and Witnesses § 2927 (NCI4th)— statement by another—not prior inconsistent statement**

Testimony by a State's witness on cross-examination in a murder trial that a person called "Grip" had told her he "shot at the boy" was not admissible as a prior inconsistent statement since it was not a prior statement of the witness, and it was not

STATE v. DALE

[343 N.C. 71 (1996)]

inconsistent with her testimony that defendant, Grip, and two other men asked her to help them rob the victim several days before the shooting, that all four men carried weapons, and that she did not see the shooting.

**Am Jur 2d, Witnesses §§ 1008, 1011-1013, 1016, 1018, 1022, 1023.**

**Use or admissibility of prior inconsistent statements of witness as substantive evidence of facts to which they relate in criminal case—modern state cases. 30 ALR4th 414.**

**3. Evidence and Witnesses § 765 (NCI4th)— cross-examination—door not opened by State's direct examination**

The State's direct examination of a witness in a murder trial did not open the door to testimony by the witness on cross-examination that a person called "Grip" had told her he "shot at the boy" where the witness did not give any testimony on direct examination which related to anything Grip told her after the killing, and this testimony did not explain or clarify any evidence presented by the State on her direct examination. Assuming that the exclusion of this testimony was error, defendant was not prejudiced where the trial court's ruling did not exclude further testimony by the witness that she "told the police Grip shot at the boy."

**Am Jur 2d, Appellate Review §§ 752-754, 759.**

**4. Criminal Law § 818 (NCI4th)— interested witness instruction not required**

The trial court did not err, much less commit plain error, by refusing to give an instruction in a murder trial on the testimony of an interested witness, and the trial court's instruction that the jury could consider the interest, bias, or prejudice of a particular witness in determining whether to believe the witness was sufficient, where the State's only eyewitness to identify defendant as the shooter testified that she had not been promised anything in exchange for her testimony; she was not charged with any offense related to this crime; she was not testifying pursuant to a plea agreement or a grant of immunity; and nothing other than a pending probation violation suggested that she had an interest in the outcome of this case.

**Am Jur 2d, Witnesses §§ 1406, 1412.**

**STATE v. DALE**

[343 N.C. 71 (1996)]

**Necessity of, and prejudicial effect of omitting, cautionary instruction to jury as to reliability of, or factors to be considered in evaluating, eyewitness identification testimony—state cases. 23 ALR4th 1089.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing sentence of life imprisonment entered by Battle, J., at the 24 October 1994 Criminal Session of Superior Court, Wake County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 15 November 1995.

*Michael F. Easley, Attorney General, by John F. Maddrey, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Charles L. Alston, Jr., Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant was tried noncapitally on an indictment charging him with the first-degree murder of Barry Maurice Wiggs ("victim"). The jury returned a verdict finding defendant guilty as charged, and defendant was sentenced to life imprisonment. For the reasons discussed herein, we uphold defendant's conviction and sentence.

The State's evidence tended to show that just after noon on 21 July 1993, defendant and the victim stood and talked in front of an abandoned building in Raleigh. The victim began running, and defendant chased the victim down a sidewalk. While giving chase defendant fired two shots which missed the victim. A third shot, fired at close range, hit the victim in the head; and the victim fell to the pavement.

An examination of the body revealed a small entry wound at the base of the victim's skull and an exit wound in the victim's forehead. The medical examiner determined that the shot was fired from a distance of at least two feet and that the bullet wound would have killed the victim instantly. In the medical examiner's opinion, the murder weapon was probably a small-caliber gun. Two nine-millimeter shell casings were found at the crime scene.

The victim was a drug dealer, and the evidence tended to show that defendant had been involved in a plan to rob the victim prior to the shooting. Defendant, Iven Morgan, Jr. ("Grip"), and two other men

STATE v. DALE

[343 N.C. 71 (1996)]

visited Barbara Williams several days before the shooting and asked Ms. Williams to help them rob the victim. Ms. Williams was the victim's friend, and she declined. According to Ms. Williams, all four men usually carried a gun, and Grip had a nine-millimeter pistol in his possession on the day that the men asked her to help them rob the victim.

Four to six days after the killing, Tracey Watkins heard defendant say that he had "smoked [the victim]." Ms. Watkins testified that defendant had a nine-millimeter gun in his possession at the time he made this statement.

Defendant presented evidence at trial which tended to show that he was at his girlfriend's house at the time of the murder. Another defense witness stated that he saw the shooting and that defendant was not the killer.

In his first assignment of error, defendant contends that the trial court erred by sustaining the State's objections to questions posed by defendant during his cross-examination of Barbara Williams. We disagree.

Ms. Williams testified that four men, including defendant and Grip, asked her to help them rob the victim several days before the killing. On cross-examination defendant elicited testimony that Grip had a nine-millimeter pistol in his possession on that day, and the following exchange occurred:

Q. And then after this happened, Grip said they were going—

[THE PROSECUTOR]: Objection as to what Grip said unless he is going to testify later on, Your Honor.

COURT: Well, objection sustained.

Q. Did you tell the police that one of the members of the conspiracy had planned to allow another member of the conspiracy to quote take the rap? Did you tell the police that?

A. I told the police Grip shot at the boy. That is what I told the police. That is what Grip told me.

[THE PROSECUTOR]: Objection to what Grip told her, Your Honor, and motion to strike.

COURT: Well, motion allowed. Disregard that comment of the witness.

[1]   "Counsel is allowed great latitude on cross-examination to test matters related by a witness on direct examination." *State v. Lee*, 335 N.C. 244, 271, 439 S.E.2d 547, 560, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 162 (1994). With respect to the trial court's ruling sustaining the State's objection to the first question, however, the record fails to show what the answer would have been had the witness been permitted to respond.

> "It is well established that an exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness' testimony would have been had he been permitted to testify." *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985) (citing *State v. Cheek*, 307 N.C. 552, 299 S.E.2d 633 (1983)). "[I]n order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." *Id.* at 370, 334 S.E.2d at 60 (citing *Currence v. Hardin*, 296 N.C. 95, 249 S.E.2d 387 (1978)).

*State v. Johnson*, 340 N.C. 32, 49, 455 S.E.2d 644, 653 (1995). In this instance the record does not show what the witness' answer would have been had she been permitted to respond to defendant's first question. Thus, defendant cannot show that the trial court's ruling with respect to this question prejudiced him. *State v. Miller*, 288 N.C. 582, 593, 220 S.E.2d 326, 335 (1975).

[2]   The trial court also sustained the State's objection and motion to strike Ms. Williams' testimony with respect to what Grip told her. Defendant contends that this testimony is admissible for three reasons: (i) prior inconsistent statements are always admissible to impeach a witness; (ii) the testimony was not offered for the truth of the matter asserted, but rather to explain and clarify a subject alluded to by the State on direct examination; and (iii) the State's direct examination "opened the door" to the testimony. We disagree.

"For impeachment purposes a witness may ordinarily be cross-examined concerning statements he has made on other occasions which are inconsistent with his testimony at the present trial." *State v. McKeithan*, 293 N.C. 722, 730, 239 S.E.2d 254, 259 (1977). In this instance, however, the State objected only to what Grip told Ms. Williams, not to the testimony with respect to what she told the police. For this reason the trial court's ruling did not exclude any of

Ms. Williams' prior statements, including her testimony that she "told the police Grip shot at the boy."

Moreover, Ms. Williams' testimony at trial was not inconsistent with the excluded statement. Ms. Williams' testimony on direct examination was that defendant, Grip, and two other men asked her to help them rob the victim several days before the shooting. She also stated that all four of the men were at her house on the morning and the afternoon of the murder. On cross-examination Ms. Williams testified that all of the men carried a weapon at all times and that Grip carried a nine-millimeter pistol on the day the men asked her to help them rob the victim. Importantly, Ms. Williams testified that she did not see the shooting. She did not give any testimony inconsistent with the statement that "Grip shot at the boy." We conclude that the excluded testimony was not a prior statement of the witness and that it was not inconsistent with any of her testimony at trial. Thus, the testimony was not admissible as a prior inconsistent statement.

[3] Defendant also argues that Ms. Williams' testimony was admissible to explain and clarify a subject alluded to by the State on direct examination and that the State "opened the door" to this testimony.

> The phrase "opening the door" refers to the principle that "[w]here one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially." *State v. Garner*, 330 N.C. 273, 290, 410 S.E.2d 861, 870 (1991) (quoting *State v. Albert*, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981)).

*State v. Rose*, 335 N.C. 301, 337, 439 S.E.2d 518, 538, *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 883 (1994).

The State presented evidence through Ms. Williams' testimony that defendant, Grip, and two other men asked her to help them rob the victim several days before the killing. Ms. Williams did not give any testimony on direct examination which related to anything Grip told her after the killing, and the excluded testimony did not explain or clarify any evidence presented by the State on her direct examination. For this reason we conclude that the trial court properly excluded the testimony with respect to what Grip told Ms. Williams.

Assuming *arguendo* that the excluded testimony was admissible, the trial court's ruling could not have prejudiced defendant. The

State's objection and motion to strike applied only to what Grip told Ms. Williams, not to Ms. Williams' testimony that she "told the police Grip shot at the boy." This testimony was not excluded by the trial court's ruling and was thus available for the jury's consideration. We conclude that there is no reasonable possibility that, had the testimony not been excluded, a different result would have been reached at trial. *See* N.C.G.S. § 15A-1443(a) (1988). This assignment of error is overruled.

[4] Defendant next assigns as error the trial court's refusal to give an instruction on the testimony of an interested witness as requested by the State during the charge conference. Defendant contends that the trial court committed plain error by failing to give the instruction requested by the State. We disagree.

The State made a general request at the charge conference for an instruction on interested witnesses. The trial court declined this request, stating that the instruction on considering the interest and bias of a witness would be sufficient. Defendant did not object when the trial court declined the State's request, and defendant did not make any specific request at that time for an instruction on the testimony of an interested witness. After the trial court gave its instructions, defendant again did not object or make any request for further instructions. Thus, the trial court was never made aware of a specific instruction sought by the parties with respect to the testimony of an interested witness. Under these circumstances this assignment of error must be reviewed under the "plain error" rule. *See State v. Allen*, 339 N.C. 545, 554-55, 453 S.E.2d 150, 155 (1995).

"[T]he term 'plain error' does not simply mean obvious or apparent error." *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993); *accord State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). In order to rise to the level of plain error, the error in the trial court's instructions must be so fundamental that (i) absent the error, the jury probably would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected. *Collins*, 334 N.C. at 62, 431 S.E.2d at 193.

Defendant argues that the pattern jury instruction on the testimony of an interested witness would have isolated and emphasized the steps the jury should have used in considering the testimony of Denise Yates, who saw defendant chase the victim and who was the only eyewitness to identify defendant as the shooter. However, "an instruction to scrutinize the testimony of a witness on the ground of

interest or bias is a subordinate feature of the case which does not require the trial judge to give the cautionary instruction *unless there is a request for such an instruction.*" *State v. Vick*, 287 N.C. 37, 43, 213 S.E.2d 335, 339 (1975).

Further, the trial court gave the following instruction to the jury:

> In determining whether to believe any witness you should apply the same tests of truthfulness which you apply in your everyday affairs.

> As applied to this trial these tests may include the opportunity of the witness to see, hear, know or remember the facts or occurrences about which he or she testified; the manner and appearance of the witness; any interest, bias or prejudice the witness may have; the apparent understanding and fairness of the witness . . . .

In *State v. Alexander*, 337 N.C. 182, 446 S.E.2d 83 (1994), where the trial court gave an almost identical instruction, we held that the failure to give the requested pattern jury instruction concerning the testimony of an interested witness was harmless error. *Id.* at 193, 446 S.E.2d at 90.

We also note that there was very little evidence that Ms. Yates was· an interested witness. The record discloses that Ms. Yates' criminal record included a probation violation and that at the time of trial she was awaiting a court appearance for this violation. On the morning that she testified, Ms. Yates apparently made a statement that she was not going to testify on account of something that the prosecutor had not done. However, Ms. Yates testified that she had not been promised anything in exchange for her testimony. Ms. Yates was not charged with any offense related to this crime, she was not testifying pursuant to a plea agreement or a grant of immunity, and nothing other than the probation violation suggested that she had an interest in the outcome of this case.

Under these circumstances the trial court's instruction that the jury could consider the interest, bias, or prejudice of a witness in determining whether to believe a particular witness was sufficient. We conclude that the trial court did not err, much less commit plain error, by declining to give an instruction on the testimony of an interested witness. Accordingly, this assignment of error is overruled.

We conclude that defendant received a fair trial free from prejudicial error.

NO ERROR.